UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

PETER R. MORGAN,

        **Plaintiff,**

 vs.               6:20-CV-1424
                     (MAD/ML)
**CITY OF UTICA, NEW YORK,**

        **Defendant.**

_____

APPEARANCES:            OF COUNSEL:

**PETER R. MORGAN**
70 West Main Street
Mohawk, New York 13407
Plaintiff *pro se*

**CITY OF UTICA – CORPORATION COUNSEL**  **ZACHARY OREN, ESQ.**
1 Kennedy Plaza, 2nd Floor
Utica, New York 13502
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

  Plaintiff, proceeding *pro se*, commenced this action on November 5, 2020, in New York State Supreme Court, Oneida County, alleging false imprisonment, unlawful confinement, assault and battery, and malicious prosecution. *See* Dkt. No. 1-1 at 3-4. Defendant removed the action to this Court on November 19, 2020. *See* Dkt. No. 1. On May 21, 2021, the Court granted Defendant's motion to dismiss all claims. *See* Dkt. No. 24. Specifically, the Court found that Defendant failed to set forth a claim for *Monell* liability and, since the only named Defendant was the City of Utica, Plaintiff's complaint must be dismissed. *See id.* at 4-5. Additionally, the Court addressed the substantive allegations in the complaint and found that, in the alternative, they

failed to set forth any plausible claims for relief. *See id.* at 6-12. On June 1, 2021, Plaintiff filed an amended complaint alleging the same four causes of action.

Currently before the Court are the parties' cross-motions for summary judgment. *See* Dkt. Nos. 100 & 108.

## II. BACKGROUND

Starting in 2011, Plaintiff was involved in a romantic relationship with Melinda Miner until 2018. *See* Dkt. No. 108-18 at ¶¶ 1-2. Shortly after the end of the relationship, an order of protection was entered in favor of Ms. Miner against Plaintiff by the New York State Family Court, Herkimer County. *See id.* at ¶ 3. Of note, the Herkimer County Family Court entered a stay away order of protection in favor of Ms. Miner against Plaintiff on November 1, 2019, that was to stay in effect until November 1, 2020. *See id.* at ¶ 4. The order was served on Plaintiff and he never appealed. *See id.* at ¶ 5.

Starting in August 2015, Ms. Miner began working at the Masonic Care Community, located at 2150 Bleecker Street, in the City of Utica. *See id.* at ¶ 8. Ms. Miner had set lunch hours, which were from 1:00 p.m. to 1:30 p.m. *See id.* at ¶ 9. As such, Ms. Miner would frequent the Dari Del, a gas station/convenience store located at the corner of Bleecker and Culver, for her lunch breaks, as it is close in proximity to her work. *See id.* at ¶ 10. Additionally, around the time she began her employment with Masonic Care Community, Ms. Miner purchased a silver Lincoln MKZ, which was her only vehicle. *See id.* at ¶¶ 12-13; *see also* Dkt. No. 108-3 at 30.

Turning to the day of the incident, January 7, 2020, Ms. Miner was working at Masonic Community Care and took her lunch break shortly after 1:00 p.m. that day. *See* Dkt. No. 108-18 at ¶¶ 14-15. On her lunch break, Ms. Miner went to the Dari Del in her Lincoln MKZ. *See id.* at ¶ 16. Specifically, Ms. Miner traveled along Bleecker Street in a westerly direction. *See id.* at ¶

17. Also at this time, Plaintiff was operating a black Subaru hatchback in a westerly direction on Bleecker Street, immediately in front of Plaintiff's vehicle. *See id.* at ¶ 18. Security camera footage obtained from Auto Dimensions Plus at 412 Culver Avenue, looking east along Bleecker Street confirms the same. *See id.* at ¶ 19. Initially, Plaintiff was in the right-turn lane, while Ms. Miner was in the farthest left lane waiting to turn into the Dari Del. *See id.* at ¶¶ 20-21. Upon Ms. Miner turning into the Dari Del, Plaintiff then left the far-right turn lane and crossed three lanes of traffic to turn into the Dari Del parking lot. *See id.* at ¶ 22. While Plaintiff was turning into the lot, Ms. Miner parked her vehicle at the northern corner of the store. *See id.* at ¶ 23. Plaintiff then parked his vehicle near the rear end of Plaintiff's vehicle, opposite the direction of and away from the gas pumps. *See id.* at ¶ 24.

Video of this incident reveals that Plaintiff was parked behind Ms. Miner's vehicle for fifty-seven (57) seconds. *See id.* at ¶ 25. During this time, Plaintiff did not make any purchases at the Dari Del or even exit his vehicle. *See id.* at ¶ 26; *see also* Dkt. No. 108-9 at 13:22:34-13:23:31. When Plaintiff parked behind her vehicle, Ms. Miner called 911. *See* Dkt. No. 108-18 at ¶ 27. While Ms. Miner was on the phone with 911, Plaintiff left the parking lot by pulling back onto Bleecker Street. *See id.* at ¶ 28. Plaintiff then made a right turn onto Culver Avenue from the right hand turn lane on Bleecker Street that he was originally driving in before pulling into the Dari Del parking lot. *See id.* at ¶ 29. As for Ms. Miner, upon seeing Plaintiff leave the area, she ended her call with 911, purchased her lunch, and returned to work. *See id.* at ¶ 30.

Upon returning to work, Ms. Miner was still upset over the encounter, discussed the incident with her boss, and ultimately decided to call the police. *See id.* at ¶ 32. Utica Police Officer Maynard Anken responded to Plaintiff's call and took her statement while she was at

work. *See id.* at ¶¶ 32-33. Ms. Miner's statement was captured by Officer Anken's body camera and she ultimately signed a supporting deposition concerning the incident. *See id.* at ¶¶ 33-34.

Using Ms. Miner's supporting deposition, Officer Anken lodged a complaint against Plaintiff for criminal contempt in the second degree: disobeying a court order pursuant to New York Penal Law § 215.50(3). *See id.* at ¶ 35. Specifically, the Utica Police Department Incident Report includes an addendum entered by Officer Anken on January 7, 2020, with the operative order of protection downloaded from the New York State Police. *See id.* at ¶ 36. Additionally, Officer Anken notified the Herkimer Police Department of the charge lodged against Plaintiff. *See id.* at ¶ 37.

Later that day, officers from the Herkimer Police Department arrested Plaintiff at his home. *See* Dkt. No. 108-18 at ¶ 38. Plaintiff was subsequently transferred to the custody of the Utica Police Department. *See id.* at ¶ 39. Body camera footage of the prisoner exchanges reveals that the officers made only minimal contact with Plaintiff during the prisoner exchange and that Plaintiff did not complain about the contact that was made or the manner in which the handcuffs were applied. *See id.* at ¶ 41. Plaintiff was subsequently booked at the Utica Police Station, arraigned at the Oneida County Jail, and then released from custody. *See id.* at ¶ 42.

Ms. Miner, in addition to supporting a criminal charge against Plaintiff, filed a petition against him in the Herkimer County Family Court alleging, among other things, that Plaintiff violated the order of protection as a result of the Dari Del incident on January 7, 2020. *See id.* at ¶ 45. On February 6, 2020, the Herkimer County Court held a trial on the issues raised in the petition, during which Plaintiff was permitted to and did in fact called witnesses in his defense. *See id.* at ¶¶ 46-47; *see also* Dkt. No. 108-6 at 245-56. At the conclusion of the trial, the Herkimer Family Court found by a preponderance of the evidence that Plaintiff had violated the

order of protection at the Dari Del on January 7, 2020, and on February 27, 2020, the court sentenced Plaintiff to an additional thirty (30) days in jail. *See id.* at ¶¶ 48-49. Although Plaintiff appealed the Family Court decision, he failed to timely perfect the appeal. *See id.* at ¶ 50. Plaintiff also moved for reconsideration of the Family Court's decision, which was denied and no appeal was taken from that decision. *See id.* at ¶¶ 51-52.

On September 15, 2020, in Utica City Court, Plaintiff's criminal charge of criminal contempt in the second degree was dismissed. *See id.* at ¶ 54. Assistant District Attorney Matthew Worth noted that the reason the case was being dismissed was due to the fact that Plaintiff had been convicted and punished by the Herkimer County Family Court for the same incident that was the basis for the criminal charge. *See id.* at ¶ 55; *see also* Dkt. No. 108-11 at 6-7.

### III. DISCUSSION

**A.     Standard of Review**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Id.* at 36-37 (quotation and other citation omitted). Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258 (1986). In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36

(citing *Anderson*, 477 U.S. at 255) (other citations omitted).  Irrelevant or unnecessary facts do not preclude summary judgment, even when they are in dispute.  *See Anderson*, 477 U.S. at 258.

The moving party bears the initial burden of establishing that there is no genuine issue of material fact to be decided.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  With respect to any issue on which the moving party does not bear the burden of proof, it may meet its burden on summary judgment by showing that there is an absence of evidence to support the nonmoving party's case.  *See id.* at 325.  Once the movant meets this initial burden, the nonmoving party must demonstrate that there is a genuine unresolved issue for trial.  *See* Fed. R. Civ. P. 56(e).  A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'"  *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted).  The Second Circuit has held that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education.  *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).  "However, this does not mean that a *pro se* litigant is excused from following the procedural requirements of summary judgment."  *Kotler v. Fischer*, No. 9:09-CV-01443, 2012 WL 929823, *12 (N.D.N.Y. Mar. 19, 2012) (citations omitted).  Specifically, "a *pro se* party's 'bald assertion,' completely unsupported by evidence is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citing *Cary v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

**B.     Plaintiff's Moving Papers and Response**

6

Pursuant to Local Rule 56.1, "[a]ny motion for summary judgment shall contain a separate Statement of Material Facts.  The Statement of Material Facts shall set forth, in numbered paragraphs, a short and concise statement of each material fact about which the moving party contends there exists no genuine issue.  Each fact listed shall set forth a specific citation to the record where the fact is established." N.D.N.Y. L.R. 56.1(a).  Local Rule 56.1 further provides that the party opposing a motion for summary judgment shall file a response to the statement of material facts, which "shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in a short and concise statement, in matching numbered paragraphs," with "specific citation to the record where the factual issue arises." N.D.N.Y. L.R. 56.1(b).  The Local Rule further provides that "[t]he Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." *Id.* (emphasis in original).

The Second Circuit has recognized "that district courts have the authority to institute local rules governing summary judgment submissions . . . and have affirmed summary judgment rulings that enforce such rules." *N.Y. Teamsters Conference Pension & Retirement Fund v. Express Servs., Inc.*, 426 F.3d 640, 648-49 (2d Cir. 2005) (internal and other citations omitted). "Rules governing summary judgment practice are essential tools for district courts, permitting them to efficiently decide summary judgment motions by relieving them of the onerous task of 'hunt[ing] through voluminous records without guidance from the parties.'" *Id.* at 649 (quotation and other citations omitted).

In the present matter, Plaintiff failed to include a statement of material facts with his motion for summary judgment and he failed to file a response to Defendant's statement of material facts.  Plaintiff's motion consists of an eight page memorandum of law with eighty-two

pages of exhibits attached. *See* Dkt. No. 100. In his memorandum of law, Plaintiff discusses a wide ranging conspiracy that has been perpetrated against him by Ms. Miner, "multiple corrupt police officers, ambulance, hospital staff, advocates from Catholic charities, sheriffs departments, district attorneys, and pastors with personal vendettas against me, Attorney General, Investigator General, Previous Governor, Federal Bureau of Investigation, lawyers and judges." *Id.* at 2. As set forth in more detail below, Plaintiff's conclusory assertions are insufficient to create material issue of fact as to any of his claims. Similarly, Plaintiff's response to Defendant's motion fails to create an issue of fact and Defendant is entitled to summary judgment on all remaining claims.

C.     **False Arrest**

Defendant contends that Plaintiff's false arrest claim must be dismissed because there was probable cause for the arrest. *See* Dkt. No. 108-19 at 7-14. Plaintiff's response does not specifically respond to this argument. *See* Dkt. No. 110 at 2-4.

"'A § 1983 claim for false arrest ... is substantially the same as a claim for false arrest under New York law.'" *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). "Under New York law, an action for false arrest requires that the plaintiff show that '(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Id.* (quoting *Broughton v. State of New York*, 37 N.Y.2d 451, 456 (1975)).

"Probable cause 'is a complete defense to an action for false arrest' brought under New York law or § 1983." *Id.* (quotation omitted). "Probable cause to arrest exists when the officers have ... reasonably trustworthy information as to [ ] facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been ... committed by the

person to be arrested." *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007). In deciding whether probable cause existed for an arrest, the court must assess "whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)). Whether probable cause existed for the charge "actually invoked by the arresting officer at the time of the arrest" is irrelevant. *Devenpeck*, 543 U.S. at 154. Accordingly, a defendant will prevail if there was probable cause to arrest the plaintiff for any single offense. *See Marcavage v. City of New York*, 689 F.3d 98, 109-10 (2d Cir. 2012). The same is true under New York law: probable cause "does not require an awareness of a particular crime, but only that some crime may have been committed." *Wallace v. City of Albany*, 283 A.D.2d 872, 873 (3d Dep't 2001). Even if there was not probable cause, a police officer is entitled to qualified immunity if they had arguable probable cause to arrest a plaintiff in a false arrest suit. *See Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (quoting *Zalaski v. City of Hartford*, 723 F.3d 382, 390 (2d Cir. 2013)).

In the present matter, the undisputed record evidence establishes that there was probable cause to arrest Plaintiff. Shortly after Plaintiff's relationship with Ms. Miner ended, an order of protection was entered in favor of Ms. Miner against Plaintiff by the Herkimer County Family Court, which ordered Plaintiff to, among other things, "stay away from" Ms. Miner. *See* Dkt. No. 108-3 at 142. The stay away order was in effect from November 1, 2019 through November 1, 2020. Moreover, Plaintiff was personally served with the order of protection and was present in the Herkimer County Family Court when it was issued. Ms. Miner reported the January 7, 2020 incident at the Dari Del to Utica Police Officer Anken and her statement was recorded on the officer's body camera. Using Ms. Miner's oral statement and supporting deposition, Officer Anken lodged an information complaint against Plaintiff for criminal contempt in the second

degree pursuant to New York Penal Law § 215.50(3).  Officer Anken then notified the Herkimer Police Department of the charge lodged against Plaintiff, who arrested Plaintiff later that day.

"A person is guilty of criminal contempt in the second degree when he engages in any ... [i]ntentional disobedience or resistance to the lawful process or other mandate of a court[.]" N.Y. Penal Law § 215.50(3).  "'Under New York law, the crime of criminal contempt in the second degree requires that (1) a valid protective order existed, (2) the defendant knew about that order, and (3) the defendant intended to violate the order.'" *Williams v. Suffolk Cnty.*, 284 F. Supp. 3d 275, 285-86 (E.D.N.Y. 2018) (quotation and other citations omitted).

Here, Ms. Miner's verbal complaint and supporting deposition were sufficient to establish probable cause.  Plaintiff fails to present any evidence that would have caused Officer Anken to doubt Ms. Miner's veracity.  Additionally, before the criminal information was issued, Officer Anken confirmed that there was an order of protection in place.  Accordingly, the Court finds that there was probable cause to arrest Plaintiff for the crime charged and, therefore, his false arrest claim must be dismissed.  *See Williams*, 284 F. Supp. 3d at 286.  Alternatively, there was, at the very least, arguable probable cause to arrest Plaintiff, and, therefore, Defendant is entitled to qualified immunity as to this claim.

**D.    Malicious Prosecution**

Under both New York State law and the Fourth Amendment, a malicious prosecution claim requires: (1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff; (2) the termination of the proceeding in favor of the accused;[1] (3) the absence

---

[1] In *Thompson v. Clark*, 142 S. Ct. 1332 (2022), the Supreme Court resolved a circuit split regarding how to apply the favorable-termination element in a section 1983 claim.  Prior to *Thompson*, for a federal malicious prosecution claim to succeed in the Second Circuit, the favorable-termination element required some affirmative indication of the plaintiff's innocence in

(continued...)

of probable cause for the criminal proceedings; and (4) actual malice. *See Kee v. City of New York*, 12 F.4th 150, 161-62 (2d Cir. 2021) (citations omitted). To succeed on a Fourth Amendment malicious prosecution claim, the plaintiff also must establish "some deprivation of liberty consistent with the concept of 'seizure' ... to ensure that the § 1983 plaintiff has suffered a harm of constitutional proportions." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995).

"'Probable cause, in the context of malicious prosecution, has ... been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty.'" *Kee*, 12 F.4th at 166 (quoting *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003)). "Although probable cause to prosecute is a complete defense to a claim of malicious prosecution, ... such probable cause must be shown as to each crime charged in the underlying criminal action." *Id.* (internal and other citations omitted). "Thus, probable cause to prosecute should not be conflated with probable cause to arrest." *Id.*

A police officer likewise is entitled to qualified immunity on a malicious prosecution claim if there was "arguable probable cause" at the time the criminal proceeding commenced and continued. *See Betts v. Shearman*, 751 F.3d 78, 82, 83 (2d Cir. 2014). In assessing arguable probable cause, the inquiry is "whether *any* reasonable officer, out of the wide range of reasonable people who enforce the laws in this country, *could have* determined that the challenged action was lawful." *Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016) (emphases in original).

---

[1](...continued)
the underlying proceeding. *See Lanning v. City of Glens Falls*, 908 F.3d 19, 25 (2d Cir. 2018). The Supreme Court rejected this requirement and held that "[a] plaintiff need only show that the criminal prosecution ended without a conviction." *Thompson*, 142 S. Ct. at 1341.

In the present matter, the criminal contempt in the second degree charge was dropped against Plaintiff only after the Herkimer County Family Court found that Defendant had violated the order of protection on January 7, 2020 and sentenced him to an additional thirty (30) days in jail. As discussed, both the Family Court petition and the criminal charge for criminal contempt in the second degree were filed as a result of Plaintiff's conduct on January 7, 2020 at the Dari Del.

It is well settled that a disposition under Section 841 of the Family Court Act for a proven violation of an order of protection is considered punitive in nature, thus triggering double jeopardy protections. *See People v. Wood*, 95 N.Y.2d 509, 513 (2000). Since Plaintiff had already been found to have violated the order of protection and punished for that conduct by the Family Court, the criminal charge against Plaintiff was subject to dismissal on double jeopardy grounds. Having already been found to have engaged in the conduct alleged in the criminal charge by the Herkimer County Family Court, it necessarily follows that there was probable cause, or at least arguable probable cause, to prosecute Plaintiff for that conduct. Moreover, this claim is also subject to dismissal under *Heck v. Humphrey*, 512 U.S. 477 (1994), since a finding that there was no probable cause for the charge of criminal contempt in the second degree would necessarily imply the invalidity of the Family Court order finding Plaintiff in criminal contempt of that court's order of protection.

Accordingly, the Court grants Defendant's motion for summary judgment as to Plaintiff's malicious prosecution claim.

**E.     *Monell* Liability**

To establish a municipal liability claim, "a plaintiff is required to plead and prove three elements: '(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a

denial of a constitutional right.'" *Lucente v. County of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020) (quoting *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)); *see also Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 257 (2d Cir. 2020). A plaintiff can establish an official policy or custom by showing any of the following: (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised "deliberate indifference" to the rights of the plaintiff and others encountering those subordinates. *See Iacovangelo v. Corr. Med. Care, Inc.*, 624 Fed. Appx. 10, 13-14 (2d Cir. 2015) (formal policy officially endorsed by the municipality); *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014) (widespread and persistent practice); *Carter v. Inc. Village of Ocean Beach*, 759 F.3d 159, 164 (2d Cir. 2014) (failure to train amounting to deliberate indifference); *Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d Cir. 2012) (policymaking official's "express" or "tacit" ratification of low-level employee's actions); *see also Hansen v. Watkins Glen Cent. Sch. Dist.*, 832 Fed. Appx. 709, 715 (2d Cir. 2020) (affirming the district court's finding that the defendant's "restricted access to school property on only four other occasions in the more than ten years he served as a [s]uperintendent" did not amount to a custom or policy). "Deliberate indifference is not demonstrated on every occasion that a plaintiff has reported potential rights violations to a policymaker: rather, constitutionally cognizable deliberate indifference is a 'stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'" *O'Kane v. Plainedge Union Free Sch. Dist.*, 827 Fed. Appx. 141, 143 (2d Cir. 2020) (quoting *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 410 (1997)).

"[U]nder *Monell* municipal liability for constitutional injuries may be found to exist even in the absence of individual liability, at least so long as the injuries complained of are not solely attributable to the actions of named individual defendants." *Barrett v. Orange Cnty. Hum. Rights Comm'n*, 194 F.3d 341, 350 (2d Cir. 1999); *see also Rutigliano v. City of New York*, 326 Fed. Appx. 5, 9 (2d Cir. 2009).  "[E]ven in situations where the acts or omissions of individual employees do not violate an individual's constitutional rights, 'the combined acts or omissions of several employees acting under a governmental policy or custom may violate' those rights." *Barrett*, 194 F.3d at 350 (quotations omitted).  In addition, where "the individual defendants violated plaintiff's rights but nonetheless enjoy qualified immunity," a plaintiff can pursue a *Monell* claim.  *Bonilla v. Jaronczyk*, 354 Fed. Appx. 579, 582 (2d Cir. 2009) (citing *Curley v. Village of Suffern*, 268 F.3d 65, 71 (2d Cir. 2001)).

In the present matter, the Court finds that, even assuming that Plaintiff had presented sufficient evidence to withstand summary judgment as to his false arrest and malicious prosecution claims, Defendant is still entitled to summary judgment.  In his complaint, Plaintiff sets forth the following allegations in support of *Monell* liability: (1) "The above acts of the [u]niformed Utica Police officers, were pursuant to a formal policy, promulgated or adopted by the Defendant;" (2) "The actions of the uniformed Utica Police Officers were performed by police officers who had policy making authority;" and (3) "The actions of the said Utica uniformed police officers were pursuant to an unlawful practice by uniformed officers that was so permanent and well settled so as to constitute a custom, and the practice was so wide spread, that the policy making officials had constructive notice of such." Dkt. No. 26 at 3.  Even assuming these conclusory allegations are sufficient to plead a plausible *Monell* claim, Plaintiff has failed to put forth any evidence in support of these claims.

14

Notably, there is no evidence or testimony to support the allegations that there is a formal (or even informal) policy relating to the decision to criminally charge Plaintiff for his conduct on January 7, 2020. Moreover, contrary to Plaintiff's conclusory allegation, the criminal information was filed by Utica Police Officer Anken, who was employed as a "Patrol Officer" on the day of Plaintiff's arrest. *See* Dkt. No. 108-10. Clearly, as a "Patrol Officer," Officer Anken was not a municipal official with decision-making authority. *See Shakir v. Stankye*, No. 3:11-cv-1940, 2017 WL 11514785, *4 (D. Conn. Mar. 21, 2017) (holding that the fact that a police officer may have secured the warrant for the plaintiff's arrest, arrested him, and supervised the search of his home does render him an official with decision-making authority for purposes of *Monell*) (citing cases); *see also Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 304 (S.D.N.Y. 2015) (holding that there is "no basis, on the facts alleged by Plaintiffs, for the Court to find that ... a police sergeant, had final policymaking authority with respect to how Mount Vernon police officers were to carry out searches"); *Gagne v. DeMarco*, 281 F. Supp. 2d 390, 398 (D. Conn. 2003) (holding that false arrest claim against Town of Old Saybrook and its police department failed to state claim as a matter of law because the plaintiff did not allege "or offer evidence that Officers ... possessed final policy-making authority for the town ... or the Police Department") (citation omitted); *Kaufman v. City of New York*, No. 87-CV-4492, 1992 WL 247039, *3 (S.D.N.Y. Sept. 17, 1992) (granting summary judgment on a *Monell* claim where the plaintiff "fail[ed] to submit evidence ... that [the police] [s]ergeant [who ordered his arrest] ... was a municipal policy maker with final decision making authority regarding his arrest," and noting that "[a]n officer making an arrest is not establishing policy").

Finally, Plaintiff has failed to put forth any evidence demonstrating a widespread practice. Rather, the evidence before the Court relates to an isolated incident where Plaintiff was found to have violated an order of protection.

Accordingly, the Court finds that Defendant is entitled to summary judgment on this alternative ground.

### F.    Supplemental Jurisdiction

Plaintiff pleads a state-law claim for assault and battery as his final cause of action. Where, as here, a district court has dismissed all claims over which it has original jurisdiction, the court may decline to exercise supplemental jurisdiction over remaining state-law claims. *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *Klein & Co. Futures, Inc. v. Bd. of Trade of City of New York*, 464 F.3d 255, 262 (2d Cir. 2006). The decision is a discretionary one, and its justification "lies in considerations of judicial economy, convenience and fairness to litigants[.]" *United Mine Workers of Am.*, 383 U.S. at 726; *see also Kolari v. New York–Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional 'values of judicial economy, convenience, fairness, and comity,' in deciding whether to exercise jurisdiction") (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

Here, after carefully considering the relevant factors, *i.e.*, economy, convenience, fairness, and comity, the Court finds that they weigh decidedly in favor of declining to exercise supplemental jurisdiction over Plaintiff's remaining state-law assault and battery claim. Accordingly, the Court will dismiss Plaintiff's state-law claim without prejudice pursuant to 28 U.S.C. § 1367(d).

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, the Court hereby

**ORDERS** that Plaintiff's motion for summary judgment (Dkt. No. 100) is **DENIED**; and the Court further

**ORDERS** that Defendant's motion for summary judgment (Dkt. No. 108) is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's false arrest and malicious prosecution claims are **DISMISSED with prejudice**; and the Court further

**ORDERS** that Plaintiff's state-law claim is **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1367(d); and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: October 25, 2022
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge